## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : |
| SEGAL ARTS, LLC and IRINA SEGAL, | : |
| | : |
| Defendants. | : |
| | : |

## COMPLAINT

The United States brings this action under the False Claims Act, 31 U.S.C. § 3729 *et seq*. (the "FCA") against Segal Arts, LLC ("Segal Arts") and Irina Segal ("Segal") (together, "Defendants"), to recover treble damages, civil penalties, and costs from Defendants. The United States alleges as follows:

## I.    INTRODUCTION

1.    Between at least October 24, 2017 and December 31, 2019 (the "relevant period"), Defendants engaged in a pattern and practice of falsely billing Medicare for one-on-one therapeutic exercise services, in fifteen-minute increments. Instead of providing medically necessary one-on-one therapeutic exercise, Segal provided arts-and-crafts group sessions to Medicare beneficiaries. Indeed, Segal has admitted, in a written, sworn attestation, that the services at issue were provided to groups, rather than one-on-one as required.

2.    Defendants knew, deliberately ignored, or recklessly disregarded the fact they were billing Medicare for the covered service of individual therapeutic exercise,

despite providing non-therapeutic arts-and-crafts activities to Medicare beneficiaries in group a setting.

3.     Defendants thus knowingly submitted or caused the submission of false claims to Medicare, a federal healthcare program, for services which were not provided, and knowingly made false statements to the government related to the submission of claims to Medicare.

4.     By submitting false claims to Medicare, Defendants caused the United States to pay hundreds of thousands of dollars in false claims during the period of October 25, 2017 through September 10, 2019, for which the government now seeks damages and penalties under the FCA.

5.     If the Medicare program had known that these claims were for group art sessions, rather than for one-on-one therapeutic exercise, it would not have paid these claims.

6.     The United States and Defendant entered into agreements tolling the statute of limitations for civil claims asserted by the United States against Defendants arising out of or related to the transactions described in this Complaint. The parties agreed that the period beginning on October 24, 2023 would be excluded from the computation of the applicable statute of limitations, laches, or other period of limitation.

## II.    THE PARTIES

7.     The United States brings this action on behalf of the U.S. Department of Health and Human Services ("HHS") and the Centers for Medicare & Medicaid Services ("CMS"), which administer the Medicare program, 42 U.S.C. §§ 1395 *et seq*.

8.      Defendant Segal, an adult individual, resides in Holland, Pennsylvania. Segal managed and operated Segal Arts and was its sole owner during the relevant period.

9.      Defendant Segal Arts is a limited liability corporation that exists and operates pursuant to the laws of the Commonwealth of Pennsylvania, with a principal place of business at 49 Lenape Road, Richboro, Pennsylvania 18950. Throughout the relevant period, Segal maintained ownership interests in and managed Segal Arts, and held it out to be in the business of providing occupational therapy services to Medicare beneficiaries.

10.     Throughout the relevant period, Defendants submitted to Medicare claims for payment for services provided to Medicare beneficiaries by Segal Arts or caused the submission of the claims for payment for these services to Medicare, and, on information and belief, Defendants received monies that the government paid, through the Medicare program, for these claims.

11.     Segal appears to have terminated Segal Arts as a going concern in December 2019 and de-activated it from Medicare participation effective January 13, 2020.

## III.   JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345. This civil action arises under the laws of the United States and is brought by the United States as a plaintiff pursuant to the FCA, 31 U.S.C. § 3730(a).

13.     This Court has personal jurisdiction over Defendants and venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Segal resides in this district,

Segal Arts transacted business in this district, and the acts proscribed by the FCA occurred in (or were directed by Segal from) this district.

## IV.    STATUTORY AND REGULATORY FRAMEWORK

### A.    The False Claims Act

14.    The FCA provides that any person or entity that knowingly presents, or causes to be presented, a false claim for payment or approval, or a false record or statement that is material to a claim for payment or approval, is liable to the United States for damages and penalties. *See* 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B).

15.    The FCA defines "knowingly" to mean that a defendant: "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

16.    The FCA provides that any person who violates the FCA is liable to the United States for three times the amount of damages which the United States sustains because of the act of that person, plus a civil penalty. *See* 31 U.S.C. § 3729(a)(1); 28 C.F.R. § 85.5 (stating currently applicable penalties of not less than $14,308 and not more than $28,619 for each false claim).

### B.    The Medicare Program

17.    In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, known as the Medicare program. Entitlement to Medicare is based on age, disability, or end-stage renal disease. 42 U.S.C. §§ 426, 426A. Medicare is administered by CMS, an agency within HHS.

18.     The Medicare program consists of four parts: A, B, C, and D. As alleged herein, Defendants submitted, or caused to be submitted, false claims under Medicare Part B.

19.     Medicare Part B covers outpatient care, including physician services and ancillary services, furnished by physicians and other providers and suppliers. 42 U.S.C. § 1395k.

20.     Eligible persons may enroll in Part B of the Medicare program, which covers benefits including outpatient occupational therapy services that have been performed by an occupational therapist according to a plan of care for a patient under a physician's care. 42 U.S.C. §§ 1395k(a)(2)(C), 1395x(g), 1395x(p); 42 C.F.R. § 410.59.

21.     At all times relevant to this complaint, CMS contracted with private contractors called Medicare Administrative Contractors ("MACs") to perform certain administrative functions on behalf of CMS, including reviewing and paying claims submitted by Medicare Part B healthcare providers. 42 U.S.C. §§ 1395h, 1395u; 42 C.F.R. §§ 421.3, 421.100, 421.104, 421.200.

22.     At all times relevant to this complaint, Novitas Solutions, Inc. has been the Part B MAC for Pennsylvania and New Jersey.

23.     Medicare only pays for services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). To this end, Medicare providers must assure that their services are rendered "economically and only when, and to the extent, medically necessary," and that their services are "of a quality which meets professionally recognized standards of health care." 42 U.S.C. §§ 1320c-5(a)(l) and 5(a)(2).

24.      The Medicare program only pays for Part B services that are actually rendered and are reasonable and medically necessary. 42 U.S.C. § 1395y(a). Part B occupational therapy providers must certify that services are medically necessary. 42 C.F.R. § 424.24(c)(1) and (4).

25.      CMS may issue National Coverage Determinations ("NCDs"). 42 U.S.C. § 1395ff(c)(ii)(I), (f)(1), 42 C.F.R. § 405.1060. Separately, the CMS Administrator may also issue rulings that are binding on CMS components, including MACs. 42 C.F.R. § 405.1063(b).

26.      In the absence of an NCD, MACs may make Local Coverage Determinations ("LCDs") as to whether a particular item or service is covered as reasonable and necessary within their jurisdiction. 42 U.S.C. §§ 1395ff(c)(ii)(II), (f)(2); 42 C.F.R. § 405.1062.

### 1.  Enrollment in the Medicare Program

27.      As a condition to becoming Medicare suppliers (commonly known as Medicare providers), Part B providers make certifications to the federal government in provider enrollment agreements on CMS Form 855B (Medicare Enrollment Application for clinics/group practices and certain other suppliers) and/or CMS Form 855i (Medicare Enrollment Application for physicians and certain non-physician practitioners), including:

> I agree to abide by the Medicare laws, regulations and program instructions . . . . The Medicare laws, regulations, and program instructions are available through the Medicare Administrative Contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions . . . .

* * *

> I will not knowingly present or cause to be presented a false
> or fraudulent claim for payment by Medicare, and I will not
> submit claims with deliberate ignorance or reckless
> disregard of their truth or falsity.

*See* Medicare Enrollment Application at 30, https://www.cms.gov/Medicare/CMS-

Forms/CMS-Forms/Downloads/cms855b.pdf.

28.     Relying on the veracity of these certifications, CMS makes Medicare

payments retrospectively (*i.e.*, after the services are rendered) to Part B providers.  For

this reason, Medicare payments are often referred to as reimbursements.

### 2.  Submitting Medicare Claims for Reimbursement

29.     To obtain reimbursement from the Medicare Program, providers submit a

claim form, CMS Form 1500 or its electronic equivalent, known as the 837P format, to

CMS.

30.     In submitting the CMS 1500, providers certify, among other things, that

their services were medically necessary.

31.     Among the information the provider includes on a CMS 1500 or 837P are

Current Procedural Terminology ("CPT") codes, which are five-digit codes that identify

the services rendered and for which reimbursement is sought. CPT codes are widely

used in the United States as the way medical providers seek reimbursement for

professional services from healthcare payors, including Medicare, other federal

healthcare programs, and many private insurers.

32.     The American Medical Association ("AMA") defines the CPT codes.  The

AMA also publishes annual coding manuals for CPT codes.

33.     At all relevant times, the AMA coding manual has provided these

instructions for selecting appropriate codes: "Select the name of the procedure or

service that accurately identifies the service performed. Do not select a CPT code that merely approximates the service provided."

34. Using accurate CPT codes on claims submission forms is material to and a condition of payment for the Medicare program. *See, e.g*., CMS, Medicare Learning Network Fact Sheet, Medicare Billing: 837P and Form CMS-1500 at 2–3 (Mar. 2013).

35. The Medicare program routinely denies payment to providers who bill for codes when the criteria for those codes are not actually met, including when the services are not performed as billed.

36. CMS Form 1500 notifies the Medicare provider submitting the claim that the provider is "submitting this claim for payment from federal funds" and, in the section titled "Signature of Physician or Supplier" requires the provider to certify the following:

> 1) the information on this [Form 1500] is true, accurate and complete;
>
> 2) I have familiarized myself with all applicable laws, regulations, and program instructions, which are available from the Medicare contractor;
>
> 3) I have provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision;
>
> 4) this claim . . . complies with all applicable Medicare . . . laws, regulations, and program instructions for payment . . . ;
>
> 5) the services on this form were medically necessary and personally furnished by me or were furnished incident to my professional service by my employee under my direct supervision, except as otherwise expressly permitted by Medicare . . . ;
>
> . . . .
>
> NOTICE: Any one who misrepresents or falsifies essential information to receive payment from Federal funds

requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws.

37.     CMS Form 1500 also requires the provider to acknowledge: "Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

38.     Because it is not feasible for Medicare personnel to review every patient's medical records, for the millions of claims for payments they receive from providers, the program relies on providers' compliance with Medicare requirements and trusts providers to submit truthful and accurate certifications and claims.

39.     Generally, once a provider submits CMS 1500 or 837P to CMS, the claim is paid directly to the provider without any review of supporting documentation, including medical records.

## V.     FACTUAL BACKGROUND

### A.     Segal Arts' Medicare Enrollment

40.     Segal Arts has been registered as a Medicare provider in Pennsylvania and New Jersey since at least 2010.

41.     In Segal Arts' initial Medicare enrollment in 2010, Segal agreed to be bound by the "laws, regulations, and program instructions of the Medicare program." She again agreed to be so bound in revalidating Segal Arts' Medicare enrollment in 2015, and again in the context of changing Segal Arts' address in 2017.

42.     In enrolling Segal Arts as a provider in the Medicare program, Segal additionally acknowledged her understanding that "payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws,

regulations, and program instructions . . . , and on [Segal Arts'] compliance with all applicable conditions of participation in Medicare," and she agreed that she would not "knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare" and would not "submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

**B.      CPT Code 97110 Description and Billing Requirements**

43.    CPT code 97110 is listed in the CPT Manual section for Physical Medicine and Rehabilitation Therapeutic Procedures.

44.    The description for CPT code 97110 is "Therapy procedure using exercise to develop strength, endurance, range of motion and flexibility, each 15 minutes."

45.    Per the CPT Manual, this service is to be provided one-on-one, *i.e.*, by one therapist directly treating one patient.

46.    As described, the service to be provided is to use exercise to improve the patient's strength, endurance, range of motion, and/or flexibility.

**C.      Medicare Requirements for Coverage and Reimbursement for CPT 97110**

47.    Like any service, Medicare pays for therapeutic exercise only "when, and to the extent," the provider's medical documentation establishes those procedures as "medically necessary," actually rendered, and "of a quality which meets professionally recognized standards of health care." 42 U.S.C. §§ 1320c-5(a)(l) and 5(a)(2); 42 U.S.C. § 1395y(a); 42 C.F.R. § 424.24(c).

48.    An applicable Local Coverage Determination, effective October 1, 2015 and in place at all relevant times, provided guidance to providers regarding the implementation of the Medicare requirements in the context of therapy and

rehabilitation services, including therapeutic exercise billed under CPT 97110. *See generally* Novitas Solutions, Inc., Local Coverage Determination (LCD): Therapy and Rehabilitation Services (PT, OT) (L35036).

49.    The LCD explains that, under the Medicare rules, therapeutic exercise is covered under CPT 97110 only when the following conditions are met:

a.    The therapy is provided by a licensed occupational therapist, or by an occupational therapy assistant with appropriate supervision of a licensed occupational therapist;

b.    The therapy provided is at a skilled level and meets acceptable standards of medical practice, noting that a "service is not considered a skilled therapy service merely because it is furnished by a therapist" or by an appropriately supervised assistant therapist; and

c.    The therapy is provided under a written treatment plan, with the stated goals and modalities specific to the patient's needs.

*Id.*

50.    As further explained in the LCD: "Medicare covers therapy services that require the skill of a trained and licensed practitioner to perform or supervise. Medicare does not cover therapy services that do not require the skill of a trained and licensed practitioner to perform *even when* one of the persons in the list above performs them." *Id.* (emphasis in original).

51.    Thus, "OT services that do not require the professional skills of a qualified occupational therapist to perform or supervise are not medically necessary."

52.     Further, the LCD puts the provider on notice: "It is not appropriate to bill Medicare for services that are not covered (as described by this entire LCD) as if they are covered." *Id.*

53.     Indeed, per the LCD, "medical record documentation must support the medical necessity of the services as stated in this policy," and "[t]he submitted CPT/HCPCS code must describe the service performed." *Id.*

## VI.    DEFENDANTS KNOWINGLY SUBMITTED FALSE CLAIMS FOR ONE-ON-ONE OCCUPATIONAL THERAPY SERVICES THAT WERE NOT RENDERED.

54.     Throughout the relevant period, Defendants engaged in a pattern and practice of submitting claims for reimbursement to Medicare using CPT code 97110 for services that did not meet the defined requirements for therapeutic exercise under that code.

55.     In particular, rather than providing the individualized, one-on-one therapeutic exercise sessions represented by CPT code 97110, Defendants conducted non-individualized group sessions at assisted living and adult day facilities.

56.     Further, during these group sessions, Defendants did not provide skilled therapeutic exercise as described in the LCD, but instead provided art or arts-and-crafts activities.

57.     By way of one example, according to the then-recreational director at Restore Health, formerly Penn Center for Rehabilitation and Care ("Penn Center"), a facility in Philadelphia, Pennsylvania, Segal Arts had visited the facility weekly and provided group art class to approximately five to eight residents at a time.

58.     During the period from October 25, 2017 through September 10, 2019, Defendants submitted 1,110 claim lines for reimbursement to Medicare for services

provided at Penn Center. Each of these, a selection of which are attached as Exhibit A, described the services provided using CPT code 97110.

59.     By way of another example, according to the then-program administrator at Abramson Medical Adult Day Services, a facility in Philadelphia, Pennsylvania, Segal Arts provided "art therapy" to groups of approximately five to ten patients in the facility's sunroom. According to a curriculum provided by Segal Arts, activities at Abramson included drawing, painting, and collaging.

60.     During the period from October 26, 2017 through June 1, 2018, Defendants submitted 105 claim lines for reimbursement to Medicare for services provided at Abramson. Each of these, a selection of which are attached as Exhibit B, described the services provided using CPT code 97110.

61.     By way of a third example, in a session observed by investigators from Novitas's unified program integrity contractor ("UPIC") in October 2019, at Riverfront Rehabilitation & Healthcare Center, formerly Cooper River West ("Riverfront Rehab"), in Pennsauken, New Jersey, a group of six participants painted and decorated paper masks.

62.     After the observation, the UPIC investigators interviewed Segal, who admitted that Segal Arts employees "will see between five to ten patients at a given class/activity, usually for an hour," contrary to the requirements of CPT code 97110.

63.     Prior to becoming aware of the investigation, during the period from October 27, 2017 through September 6, 2019, Defendants submitted 2,473 claim lines for reimbursement to Medicare for services provided at Riverfront Rehab. Each of these, a selection of which are attached as Exhibit C, described the services provided using CPT code 97110.

64.     Despite the fact that the group sessions provided by Defendants were not accurately described by CPT code 97110 and did not meet the LCD's requirements for therapeutic exercise covered by Medicare, Defendants submitted or caused to be submitted claims for reimbursement under the Medicare program for participants in these group art classes.

65.     In total, during the relevant period, Defendants submitted to Medicare 9,363 claims with CPT code 97110 describing the services provided in Pennsylvania and New Jersey, for which Defendants received reimbursement of $734,480.74.

66.     Defendants' conduct thus resulted in the submission of thousands of false claims to Medicare for services—namely, one-on-one occupational therapy—that were not actually provided.

67.     Throughout the relevant period, Defendants knew, within the meaning of the FCA, that these claims were false.

68.     Segal knew, when she enrolled Segal Arts as a Medicare provider, that she was obligated to follow Medicare's laws, regulations, and program instructions, and that information about those obligations was available from Novitas.

69.     Indeed, the AMA coding information and applicable Novitas LCD were available to Segal throughout the relevant time period.

70.     Despite the availability of this information and Defendants' acknowledgement of their obligations, they falsely certified with the submission of each claim that CPT code 97110—for one-on-one occupational therapy—accurately represented the services provided.

## COUNT I

### Violations of the False Claims Act:
### Presentation of False Claims

### 31 U.S.C. § 3729(a)(1)(A)

71.     The United States incorporates by reference the foregoing paragraphs as though fully set forth herein.

72.     From at least October 24, 2017 to December 31, 2019, Defendants knowingly presented or caused to be presented materially false or fraudulent claims to the United States, namely claims for reimbursement by the Medicare program that were false or fraudulent because they sought reimbursement for one-on-one therapeutic exercise as described by CPT code 97110, which was not actually provided.

73.     As a result, Defendants caused the United States to pay $734,480.74 for 9,363 false claims submitted to Medicare with CPT code 97110.

74.     Under the Medicare requirements described above, if the Medicare program had known that these claims were for group art sessions, rather than for one-on-one therapeutic exercise, it would not have paid these claims.

75.     Defendants presented these claims, or caused these claims to be presented, with actual knowledge of their falsity or in deliberate ignorance or reckless disregard of whether they were false.

76.     Defendants are thus jointly and severally liable to the United States for damages in an amount to be determined at trial, but not less than $734,480.74 in damages, trebled, as well as civil penalties of not less than $ 14,308 and not more than $28,619 (or as further adjusted under the Federal Civil Penalties Inflation Adjustment

Act of 1990, *see* 28 C.F.R. § 85.5) for each of the 9,363 false claims submitted to the Medicare program.

## COUNT II

### Violations of the False Claims Act:
### Making or Using False Statements Material to a False Claim

### 31 U.S.C. § 3729(a)(1)(B)

77.    The United States incorporates by reference the foregoing paragraphs as though fully set forth herein.

78.    From at least October 24, 2017 to December 31, 2019, Defendants knowingly made, used, or caused to be made or used, false records or statements that were material to false or fraudulent claims for payment or approval.

79.    The false records or statements appeared on CMS Form 1500 and/or its electronic equivalent, the 837P form, where Defendants falsely certified to the United States, *inter alia*, that the one-on-one therapeutic exercise services described by CPT code 97110, for which they sought payment from Medicare, were in fact provided.

80.    Defendants made these false representations for the purpose of causing the Medicare program to pay their false or fraudulent claims, and the payment of their false or fraudulent claims was the reasonable and foreseeable consequence of their statements and actions.

81.    Under the Medicare requirements described above, if Defendants had not made these false representations, *i.e.*, if the Medicare program had known that these claims were for group art sessions, rather than for one-on-one therapeutic exercise, the Medicare program would not have paid these claims.

82.     Defendants presented these claims, or caused these claims to be presented, with actual knowledge of their falsity or in deliberate ignorance or reckless disregard of whether they were false.

83.     Defendants are thus jointly and severally liable to the United States for damages in an amount to be determined at trial, but not less than $734,480.74 in damages, trebled, as well as civil penalties of not less than $14,308 and not more than $28,619 (or as further adjusted under the Federal Civil Penalties Inflation Adjustment Act of 1990, *see* 28 C.F.R. § 85.5) for each of the 9,363 false claims submitted to the Medicare program.

## COUNT III

### Violations of the False Claims Act:
### Reverse False Claims (in the Alternative)

### 31 U.S.C. § 3729(a)(1)(G)

1.     The United States incorporates by reference the foregoing paragraphs as though fully set forth herein.

2.     On October 30, 2019, UPIC investigators educated Segal about individual, skilled therapy requirements under CPT code 97110, directed her to CMS and Novitas resources for Medicare requirements, and provided her with a copy of the LCD.

3.     As of that date, if not before, Defendants knew that Segal Arts had improperly received reimbursement for the claims submitted with CPT code 97110, but which did not represent services as described by CPT code 97110, including because the services were provided in a group—rather than one-on-one—setting. That is, even if Defendants had unknowingly submitted false claims using CPT code 97110 prior to

October 30, 2019, as of that date, Defendants were aware of their mistake and, yet, retained the reimbursement payments.

4.     As of October 30, 2019, Defendants had submitted to Medicare 6,357 claims with CPT code 97110 describing the services provided in Pennsylvania and New Jersey, for which Defendants received reimbursement of $717,883.11.

5.     As of October 30, 2019, Defendants unquestionably had a legal obligation to repay the government all funds received as reimbursement for these claims.

6.     At no time thereafter, however, did Defendants take any steps to satisfy its obligation owed to the United States to return the reimbursement payments.

7.     Defendants thus delayed or avoided paying amounts owed to the government.

8.     If Defendants are not liable to the United States for damages under 31 U.S.C. § 3729(a)(1)(A) and/or § 3729(a)(1)(B), Defendants are thus jointly and severally liable to the United States for damages under 31 U.S.C. § 3729(a)(1)(A) in an amount to be determined at trial, but not less than $717,883.11 in damages, trebled, as well as civil penalties of not less than $14,308 and not more than $28,619 (or as further adjusted under the Federal Civil Penalties Inflation Adjustment Act of 1990, *see* 28 C.F.R. § 85.5) for each of the 6,357 false claims submitted to the Medicare program.

## COUNT IV

### Payment by Mistake

9.     The United States incorporates by reference the foregoing paragraphs as though fully set forth herein.

10.    The United States paid the claims described in this Complaint as a result of mistaken understandings of fact. Specifically, the United States paid those claims

under the mistaken understanding that the Medicare beneficiaries on whose behalf the claims were submitted had received one-on-one therapeutic exercise, as described by CPT code 97110 and in compliance with the LCD, such that the United States mistakenly believed Defendants were entitled to receive payment for such claims.

11.     The mistaken understanding of the United States was material to its decision to pay Defendants for the claims.

12.     The United States, acting in reasonable reliance on the truthfulness of the claims and the truthfulness of Defendants' certifications and representations that the claims were accurate, complete, and truthful, in accordance with Medicare laws, regulations, and program instructions, paid Defendants certain sums of money to which Defendants were not entitled.

13.     The United States has been damaged because of this mistaken payment, and Defendants are thus liable to account for and pay to the United States such amounts, which are to be determined at trial.

## COUNT V

### Unjust Enrichment

14.     The United States incorporates by reference the foregoing paragraphs as though fully set forth herein.

15.     From at least October 24, 2017 to December 31, 2019, the United States paid Defendants for one-on-one therapeutic exercise services that were not provided.

16.     By directly or indirectly obtaining federal funds from the Medicare program to which they were not entitled, Defendants were unjustly enriched at the expense of the United States and are liable to account and pay to the United States such amounts, or the proceeds therefrom, which are to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States demands and prays that judgment be entered in its favor and against Defendants, jointly and severally, as follows:

I.      On Counts I, II, and III under the FCA, against all Defendants jointly and severally, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are permitted by law.

II.     On Count IV for payment under mistake of fact, for an amount equal to the money paid by the United States to Defendants to which Defendants were not entitled, plus interest, costs, and expenses.

III.    On Count V for unjust enrichment, for an amount equal to the monies that the Defendants obtained from the United States without right and by which they have been unjustly enriched, plus interest, costs, and expenses.

IV.     All such further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

The United States demands a jury trial.

Respectfully submitted,

DAVID METCALF
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

CHARLENE KELLER FULLMER
Assistant United States Attorney
Deputy Chief, Civil Division

REBECCA S. MELLEY
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8328
Rebecca.Melley@usdoj.gov

Date: March 16, 2026